UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> ENVIRATRENDS, INC., and <br> RUSSELL F. HARABURDA <br><br> Defendants. | Case No. _____ |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

The Securities and Exchange Commission ("Commission" or "SEC") alleges as follows for its complaint against defendants EnviraTrends, Inc. and Russell F. Haraburda:

## SUMMARY

1. This case arises out of a fraudulent scheme by EnviraTrends, Inc. ("EnviraTrends") and its President and Chief Executive Officer, Russell F. Haraburda ("Haraburda"), to sell securities to the public in unregistered offerings based on false and misleading statements regarding the activities and financial condition of EnviraTrends and the purposes for which investors' funds would be used.

2. EnviraTrends was a development stage company purportedly in the business of developing and selling pet memorial products. From mid-2009 until at least February 2014, EnviraTrends and Haraburda (at times referred to jointly hereinafter as "Defendants") raised over $2.3 million through the sale of EnviraTrends stock to over 100 investors in thirteen states. In soliciting these funds, Defendants made numerous oral and written misrepresentations, including

1

in documents filed with the SEC, regarding EnviraTrends' activities, operations, and finances. Defendants also repeatedly assured investors that their investments would be used to build the company's business, including arranging for EnviraTrends' shares to be listed on a stock exchange or quoted on the OTC Bulletin Board ("OTCBB"), an interdealer quotation system.

3. Contrary to those representations, Haraburda misappropriated $1.8 million, or over 78% of the funds obtained from investors, spending it on personal expenses, including his mortgage payments, car and motorcycle payments, alimony, shopping sprees, and personal travel. EnviraTrends never developed or sold a product or service, and never generated any revenue.

4. Haraburda concealed the true nature of EnviraTrends' activities, as well as his own fraudulent conduct, by falsely stating to auditors that the company owed him hundreds of thousands of dollars, thus creating a pretext for his personal use of investor funds. Haraburda subsequently created sham promissory notes purporting to show that he intended to repay the amounts he had misappropriated.

5. By at least March 2013, Haraburda knew that the company was delinquent in its filings with the Commission and would not be able to have its stock listed on a stock exchange or quoted on the OTCBB. Nevertheless, Haraburda continued to represent to existing investors and potential new investors that the company's shares would soon be quoted over-the-counter.

6. By engaging in the conduct described in this Complaint, EnviraTrends violated Section 17(a) of the Securities Act of 1933 ("Securities Act"), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5, the registration provisions of Sections 5(a) and 5(c) of the Securities Act, and the reporting provisions of Section 13(a) and 15(d)(1) of the Exchange Act and Rules 12b-20, 13a-1, 13a-13, and 15d-1.

7. By engaging in the conduct described in this Complaint, Haraburda violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5, the registration provisions of Sections 5(a) and 5(c) of the Securities Act, the certification requirements of Exchange Act Rules 13a-14 and 15d-14, and the prohibition against misrepresentations to auditors in Exchange Act Rule 13b2-2. Haraburda also aided and abetted EnviraTrends' violations of the reporting requirements in Sections 13(a) and 15(d)(1) of the Exchange Act and Rules 12b-20, 13a-1, 13a-13, and 15d-1.

8. The Commission seeks an order enjoining EnviraTrends and Haraburda from further violations, requiring them jointly and severally to disgorge their ill-gotten gains, and imposing monetary penalties. The Commission also requests that Haraburda be barred from participating in penny stock offerings and from serving as an officer or director of a company that has securities registered pursuant to Section 12 of the Exchange Act or is required to file reports pursuant to Section 15(d) of the Exchange Act.

## JURISDICTION AND VENUE

9. The Court has jurisdiction of this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21 and 27 of the Exchange Act [15 U.S.C. §§ 78u and 78aa].

10. Venue is proper in the Middle District of Florida pursuant to Section 22(a) of the Securities Act and Section 27 of the Exchange Act. EnviraTrends maintained its office in this district and Haraburda resides in this district. Many of the acts and transactions constituting the violations occurred in this district, including offers and sales of securities.

11. In connection with the conduct alleged in this Complaint, Defendants directly or indirectly made use of the means or instrumentalities of interstate commerce, the means or

instruments of transportation and communication in interstate commerce, and the mails.

## DEFENDANTS

12.  **EnviraTrends** is a Wyoming corporation formed in June 2009. Throughout the period relevant to this action, EnviraTrends' office was in Sarasota, Florida. EnviraTrends has never registered a primary offering with the Commission and its common stock is not listed on any securities exchange or quoted over-the-counter.

13.  **Russell Haraburda**, age 60, is a resident of Sarasota, Florida. Haraburda founded EnviraTrends in 2009 and at all relevant times was EnviraTrends' Chief Executive Officer, President and Director. The company reported that Haraburda was a majority shareholder of EnviraTrends' common stock. At all relevant times, Haraburda controlled all aspects of the company's activities.

## DEFENDANTS' VIOLATIONS

### False Statements Regarding EnviraTrends' Business Plan and Operations

14.  During the period from mid-2009 through at least February 2014, Haraburda and EnviraTrends repeatedly stated to investors and potential investors that EnviraTrends was actively involved in developing a market for multiple lines of business, including the manufacture of pet memorial products, the manufacture and sale of personal scooters, and various joint ventures involving exports to China. When speaking to investors, Haraburda represented that their investments would go towards funding the operations of EnviraTrends, including furthering these opportunities. EnviraTrends' plan to manufacture pet memorial products was described in a registration statement that EnviraTrends filed with the Commission with an effective date of September 16, 2011 (the "Registration Statement"), as well as in the

annual report on Form 10-K filed February 3, 2012, and in the quarterly reports on Form10-Q filed on February 16, May 21, and August 7, 2012.

15.     In the five years that Haraburda ran EnviraTrends, no pet memorial products or any other products were ever developed, marketed, or sold. EnviraTrends' only facility was a small office in Sarasota used by Haraburda and his secretary, both of whom devoted much of their time to matters unrelated to EnviraTrends. Rather than conducting legitimate business operations, EnviraTrends' activities consisted largely of preparing false and misleading materials promoting the company, soliciting new investors, and providing false assurances to existing investors.

**False Statements Concerning Going Public**

16.     Haraburda and EnviraTrends falsely stated to investors and potential investors that the company's shares would soon be publicly traded pursuant to an initial public offering or by being listed on a stock exchange or quoted on the OTCBB. However, a public market for the shares was never created.

17.     In early March 2013, a market maker informed Haraburda that EnviraTrends had to be current in its SEC filings for the market maker to file a Form 211 with FINRA to quote the stock on the OTCBB on behalf of EnviraTrends. At that time, EnviraTrends was already delinquent in filing its Form 10-K for its fiscal year 2012 and its Form 10-Q for the period ending December 31, 2012.

18.     Nevertheless, Haraburda continued to falsely represent to investors that EnviraTrends' shares were about to be publicly traded. On March 22, 2013, Haraburda stated in a letter to investors that EnviraTrends had engaged a market maker to file a Form 211 and that this would "enable [the company] to commence trading." Knowing that the Form 211 could not

be filed until EnviraTrends was current with its SEC filings, Haraburda falsely stated to the market maker that the "Company [was] fully reporting with the SEC." The market maker never filed a Form 211 for EnviraTrends, and therefore never quoted a price or facilitated a public market for the securities. In December 2012, Haraburda falsely represented to a second market maker that EnviraTrends was fully reporting with the SEC, despite the fact that the company's filings remained delinquent. The second market maker also did not file a Form 211 for EnviraTrends, did not quote a price, and did not facilitate a public market.

**False Statements Concerning the Use of Investor Funds**

19. EnviraTrends and Haraburda made materially false and misleading statements to existing and potential investors concerning how investor funds had been and would be used. Haraburda repeatedly claimed that the funds received from investors were being used to build the business and create value for the shareholders. Defendants represented in the February 2012 10-K and the 10-Q's filed on February 16, May 21, and August 7, 2012, as well as the Registration Statement, that EnviraTrends had "issued stock to raise capital to fund current operations."

20. In fact, Haraburda used most of the money raised from investors for his personal expenses, not for company operations. He routinely transferred investor funds from the company's bank accounts to his personal accounts and then spent that money on personal expenses. Haraburda also paid for his personal expenses directly from the company bank accounts, using funds obtained from investors. For example, after EnviraTrends raised $100,000 from an investor in February 2013, Haraburda used 73% of these funds for his own expenses, including mortgage and car payments, alimony, his daughter's college tuition, living expenses, and a vacation in the Bahamas.

21. The following table shows the approximate amounts raised from investors from 2009 through February 2014 and the approximate amounts misappropriated by Haraburda:

| Fiscal Year | Inception - 9/30/09 | 10/1/09 - 9/30/10 | 10/1/10 - 9/30/11 | 10/1/11 - 9/30/12 | 10/1/12 - 9/30/13 | 10/1/13 - present | Totals |
|---|---|---|---|---|---|---|---|
| Amounts Raised from Investors | 12,000 | 200,000 | 850,000 | 573,000 | 455,000 | 212,000 | 2,302,000 |
| Amount Misappropriated | 9,000 | 60,000 | 681,000 | 475,000 | 377,000 | 164,000 | 1,766,000 |

22. Haraburda also misused EnviraTrends' funds by paying his secretary out of EnviraTrends' bank accounts when much of the work she performed was not for the company. The secretary was paid at least $192,000 from 2009 through 2014, but approximately 30% of that was for work unrelated to EnviraTrends.

23. After the Commission's investigation of this matter began, Haraburda in 2014 prepared false promissory notes totaling $1.8 million in an attempt to show that he intended to repay EnviraTrends for the amounts he had taken from the company. Haraburda backdated these notes to as early as December 2010, signed them, and tendered them to the Commission as if they were legitimate.

**Other False Statements and Concealment of Misappropriations**

24. Defendants made materially false and misleading statements regarding EnviraTrends' financial performance and financial condition in five filings with the Commission: (i) the Registration Statement filed on Form S-1/A, effective September 16, 2011; (ii) the annual report on Form 10-K for fiscal year 2011, filed on February 3, 2012; and (iii) three quarterly reports on Form 10-Q filed on February 16, May 21, and August 7, 2012.

25. Haraburda signed the February 2012 10-K and the 10-Q's filed on February 16, May 21, and August 7, 2012. In each, he falsely certified that to his knowledge: (i) these filings did not contain any untrue statements of material fact, and (ii) the financial information fairly

7

presented the company's financial condition, results of operations, and cash flows. Haraburda also falsely certified that he had disclosed to EnviraTrends' auditors any fraud involving management.

26.  EnviraTrends and Haraburda also represented in the February 2012 10-K and the 10-Q's filed on February 16, May 21, and August 7, 2012, as well as the Registration Statement, that EnviraTrends had "issued stock to raise capital to fund current operations." EnviraTrends and Haraburda did not disclose that most of the funds raised by EnviraTrends were misused by Haraburda for his personal expenses, and did not fund company operations.

27.  Defendants also made multiple misrepresentations in "Changes in Stockholders' Deficit" portions of these filings. The filings asserted that: (i) no investments had been made or shares issued in the first three quarters and in the entire fiscal year ending September 30, 2011; (ii) only $100 of investments had been made and spent in the first three quarters of fiscal year 2012; and (iii) the company had raised only $230,297 from investors since inception. These figures were grossly understated. In reality, the company raised from investors and spent over $567,000 in the first three quarters of fiscal year 2011, over $850,000 in fiscal year 2011, and over $550,000 in the next three quarters. The failure to disclose the true amounts raised and spent concealed Haraburda's misappropriations.

28.  EnviraTrends and Haraburda further falsely stated in these filings that Haraburda had loaned funds to the company. The financial statements submitted as part of these filings indicated that EnviraTrends owed Haraburda the following amounts: $76,600 as of September 30, 2010; $262,487 as of September 30, 2011; $299,088 as of December 31, 2011; $333,987 as of March 31, 2012; and $399,917 as of June 30, 2012. But Haraburda did not make any loans to the company. While there were occasional transfers of small sums from Haraburda's personal

bank account to the company's bank accounts, the funds transferred were investor funds that Haraburda had previously misappropriated.

**False Statements to EnviraTrends' Auditors**

29. In connection with the audit of EnviraTrends' fiscal 2010 financial results, Haraburda signed a letter dated April 25, 2011, to EnviraTrends' auditor which falsely confirmed a debt from EnviraTrends to Haraburda of $76,600 as of September 30, 2010.

30. In connection with the audit of EnviraTrends' fiscal 2011 financial results, Haraburda signed a letter dated January 10, 2012, to EnviraTrends' auditor which falsely confirmed a debt from EnviraTrends to Haraburda of $262,487 as of September 30, 2011.

31. EnviraTrends engaged a different auditor to audit EnviraTrends' fiscal 2012 financial statements. Haraburda signed a letter to the new auditor dated August 15, 2013, which falsely confirmed a debt from EnviraTrends to Haraburda of $411,817.38 as of September 30, 2012.

32. These confirmation letters were materially false because Haraburda had not loaned any money to EnviraTrends. The creation of the phony debts helped conceal Haraburda's misappropriations.

**Shares Were Sold In Unregistered Transactions**

33. From August 30, 2010 through February 14, 2014, without any breaks of more than six months, EnviraTrends and Haraburda sold EnviraTrends shares via primary offerings to investors for proceeds of over $2 million without registering any of these offerings.

34. As EnviraTrends' CEO and president, Haraburda authorized the offer and sale of EnviraTrends' stock. Haraburda personally solicited investments from investors, and also asked a promoter and a large investor to bring in additional investors.

35.  EnviraTrends and Haraburda did not make any meaningful information available to the offerees of EnviraTrends shares. They failed to keep a complete list of those to whom shares were offered, and made no effort to ensure that investors were sophisticated. Many of those who invested in EnviraTrends were not sophisticated.

36.  Investors and potential investors were not provided recent and accurate financial statements. The only audited financial statements disclosed to the public were in EnviraTrends' registration statement for fiscal year 2010 and the 10-K for fiscal year 2011, and both contained material financial misstatements. The company filed unaudited quarterly financial statements on Forms 10-Q for the quarter ending December 31, 2011 and the quarters ending March 31 and June 30, 2012, and these too were materially misstated.

**EnviraTrends Failed To Make Required Filings**

37.  On February 21, 2012, EnviraTrends filed a Form 8-A/12G registering its common stock with the Commission pursuant to Section 12(g) of the Exchange Act. EnviraTrends was subject to Section 13(a) reporting requirements from that date until May 17, 2013, when it deregistered its securities.

38.  However, EnviraTrends failed to file an annual report on Form 10-K for the fiscal year 2012 and failed to file quarterly reports on Form 10-Q for the periods ending December 31, 2012 and March 31, 2013.

**FIRST CLAIM FOR RELIEF**
**Section 17(a) of the Securities Act**
**(EnviraTrends and Haraburda)**

39.  Paragraphs 1 through 38 are realleged and incorporated by reference herein.

40.  By engaging in the conduct alleged in Paragraphs 1 through 38 in the offer or sale of securities using the means or instruments of transportation or communication in interstate

commerce or the mails, EnviraTrends and Haraburda (a) knowingly or recklessly employed a device, scheme, or artifice to defraud, (b) knowingly, recklessly, or negligently obtained money or property by means of untrue statements of material fact or omissions of material facts necessary to make the statements made not misleading, and (c) knowingly, recklessly, or negligently engaged in transactions, practices, or courses of business which operated as a fraud or deceit on the purchasers of EnviraTrends securities.

41.     By engaging in such conduct, EnviraTrends and Haraburda violated, and unless enjoined will again violate, Sections 17(a)(1), (2), and (3) of the Securities Act [15 U.S.C. §77q(a)(1), (2), and (3)].

## SECOND CLAIM FOR RELIEF
### Section 10(b) of the Exchange Act and Rule 10b-5
### (EnviraTrends and Haraburda)

42.     Paragraphs 1 through 38 are realleged and incorporated by reference herein.

43.     By engaging in the conduct alleged in Paragraphs 1 through 38 in connection with the purchase or sale of securities by use of the means or instrumentalities of interstate commerce or the mails, EnviraTrends and Haraburda, acting knowingly or recklessly, (a) employed devices, schemes, or artifices to defraud, (b) made untrue statements of material fact or omitted material facts necessary to make the statements made not misleading, and (c) engaged in acts, practices, or courses of business which operated as a fraud or deceit.

44.     By engaging in the such conduct, EnviraTrends and Haraburda each violated, and unless enjoined will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a), (b), and (c) thereunder [17 C.F.R. § 240.10b-5(a), (b), and (c)].

## THIRD CLAIM FOR RELIEF
### Sections 5(a) and 5(c) of the Securities Act
### (EnviraTrends and Haraburda)

45.     Paragraphs 1 through 38 are realleged and incorporated by reference herein.

46.     By engaging in the conduct alleged in Paragraphs 1 through 15, 19 through 22, and 24 through 38, EnviraTrends and Haraburda made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, to offer and sell EnviraTrends securities when no registration statement was in effect as to such securities and no exemption from registration was available. Haraburda was a necessary participant and substantial factor in the unregistered sales of those securities.

47.     By engaging in such conduct, EnviraTrends and Haraburda violated, and unless enjoined will again violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## FOURTH CLAIM FOR RELIEF
### Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13 (EnviraTrends);
### Aiding and Abetting Under Section 20(e) of the Exchange Act (Haraburda)

48.     Paragraphs 1 through 38 are realleged and incorporated by reference herein.

49.     As alleged in Paragraphs 1 through 15, 19 through 22, and 24 through 32, the quarterly reports filed by EnviraTrends pursuant to Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] for the periods ending March 31, 2012 and June 30, 2012, were false and misleading.

50.     As alleged in Paragraphs 37 through 38, EnviraTrends failed to file an annual report on Form 10-K for the fiscal year ending September 30, 2012, as required by Section 13(a) of the Exchange Act.

51.     As alleged in Paragraphs 37 through 38, EnviraTrends failed to file quarterly reports on Form 10-Q for the periods ending December 31, 2012 and March 31, 2013, as required by Section 13(a) of the Exchange Act.

52. By engaging in such conduct, EnviraTrends violated, and unless enjoined will continue to violate, Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13].

53. Pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], whoever "knowingly or recklessly provides substantial assistance" to another in connection with a violation of the Exchange Act or any regulation thereunder is "in violation of such provision to the same extent as the person to whom such assistance is provided."

54. By engaging in the conduct alleged in Paragraphs 1 through 15, 19 through 22, and 24 through 32, Haraburda knowingly or recklessly provided substantial assistance to EnviraTrends in its violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13 and, unless enjoined, will again aid and abet EnviraTrends' violations of those provisions.

## FIFTH CLAIM FOR RELIEF
### Exchange Act Rule 13a-14
### (Haraburda)

55. Paragraphs 1 through 38 are realleged and incorporated by reference herein.

56. Exchange Act Rule 13a-14 [17 C.F.R. § 240.13a-14] requires that the Chief Executive Officer of an issuer submitting certain filings to the Commission, including quarterly reports on Form 10-Q, must sign and submit, with each Form 10-Q, a certification in the form specified by the Commission.

57. As alleged in Paragraphs 1 through 15, 19 through 22, and 24 through 32, Haraburda submitted false certifications in connection with the quarterly reports filed by EnviraTrends on Form 10-Q for the periods ending March 31, 2012 and June 30, 2012.

58.     By engaging in such conduct, Haraburda violated, and unless enjoined will again violate, Exchange Act Rule 13a-14.

### SIXTH CLAIM FOR RELIEF
### Exchange Act Rule 13b2-2
### (Haraburda)

59.     Paragraphs 1 through 38 are realleged and incorporated by reference herein.

60.     Exchange Act Rule 13b2-2 [17 C.F.R. § 240.13b2-2] bars officers and directors of an issuer from making materially false or misleading statements to an accountant in connection with any required audit, review, or examination of the issuer's financial statements or the preparation of any report to be filed with the Commission.

61.     By engaging in the conduct alleged in Paragraphs 1 through 13, 19 through 22, 24, and 28 through 32, Haraburda made materially false or misleading statements to accountants in connection with required audits, reviews, or examinations of the financial statements of EnviraTrends and the preparation of documents to be filed with the Commission,

62.     By engaging in such conduct, Haraburda violated, and unless enjoined will again violate, Exchange Act Rule 13b2-2.

### SEVENTH CLAIM FOR RELIEF
### Section 15(d)(1) of the Exchange Act and Rules 12b-20 and 15d-1
### Aiding and Abetting Under Section 20(e) of the Exchange Act (Haraburda)

63.     Paragraphs 1 through 38 are realleged and incorporated by reference herein.

64.     As alleged in Paragraphs 1 through 15, 19 through 22, 24 through 30, and 32, EnviraTrends filed an annual report on Form 10-K for fiscal year 2011 that was materially false and misleading. An annual report was required pursuant to Section 15(d)(1) of the Exchange Act [15 U.S.C. § 78o(d)(1)] because EnviraTrends had filed a registration statement, effective in September 2011, under the Securities Act.

65. By filing an annual report containing false and misleading information, EnviraTrends violated, and unless enjoined will again violate, Section 15(d)(1) of the Exchange Act and Rules 12b-20 and 15d-1 thereunder [17 C.F.R. §§ 240.12b-20 and 240.15d-1].

66. Pursuant to Section 20(e) of the Exchange Act, whoever "knowingly or recklessly provides substantial assistance" to another in connection with a violation of the Exchange Act or any regulation thereunder is "in violation of such provision to the same extent as the person to whom such assistance is provided."

67. By engaging in the conduct alleged in Paragraphs 1 through 15, 19 through 22, 24 through 30, and 32, Haraburda knowingly or recklessly provided substantial assistance to EnviraTrends' submission of a false and misleading annual report in violation of Section 15(d)(1) of the Exchange Act and Rules 12b-20 and 15d-1, and unless enjoined will again aid and abet such violation.

### EIGHTH CLAIM FOR RELIEF
### Exchange Act Rule 15d-14
### (Haraburda)

68. Paragraphs 1 through 38 are realleged and incorporated by reference herein.

69. Exchange Act Rule 15d-14 [17 C.F.R. § 240.15d-14] requires that the principal executive officer of an issuer filing a Form 10-K pursuant to Section 15(d)(1) of the Exchange Act must sign and submit, with the Form 10-K, a certification in the form specified by the Commission.

70. As alleged in Paragraphs 1 through 15, 19 through 22, 24 through 30, and 32, Haraburda submitted a false certification in connection with the annual report filed by EnviraTrends on Form 10-K for the fiscal year ended September 30, 2011.

71.     By engaging in such conduct, Haraburda violated, and unless enjoined will again violate, Exchange Act Rule 15d-14 [17 C.F.R. § 240.15d-14].

**PRAYER FOR RELIEF**

**WHEREFORE**, the Commission respectfully requests that the Court:

A.      Permanently enjoin EnviraTrends from violating Sections 5(a), 5(c), and 17(a) of the Securities Act; Sections 10(b), 13(a), 15(d)(1) of the Exchange Act; and Exchange Act Rules 10b-5, 12b-20, 13a-1, 13a-13, and 15d-1;

B.      Permanently enjoin Haraburda from (i) violating Sections 5(a), 5(c), and 17(a) of the Securities Act; Section 10(b) of the Exchange Act; and Exchange Act Rules 10b-5, 13a-14, 13b2-2, and 15d-14; and (ii) aiding and abetting violations of Exchange Act Section 13(a) and 15(d)(1) and Exchange Act Rules 12b-20, 13a-1, 13a-13, and 15d-1;

C.      Order EnviraTrends and Haraburda jointly and severally to disgorge the ill-gotten gains obtained as a result of the violations alleged in this Complaint, with prejudgment interest;

D.      Order EnviraTrends and Haraburda to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

E.      Order that Haraburda is permanently prohibited from participating in any offering of penny stock pursuant to Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)];

F.      Order that pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(6)(2)], Haraburda is permanently barred from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act; and

G.   Grant such further relief as the Court may deem just and appropriate.

Date: 8/13/15

*/s/ H. Michael Semler*
H. Michael Semler, Trial Counsel
District of Columbia Bar No. 477398
Division of Enforcement
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
Tel: (202) 551-4429
Fax: (202) 772-9292
Email: semlerm@sec.gov

Of Counsel:
Lisa Weinstein Deitch
California Bar No. 137492
Natalie E. Shioji
District of Columbia Bar No. 991657
Division of Enforcement
Securities and Exchange Commission